Next is called for oral argument. Is In Ray Commitment Ruben Hosier Council, whenever you're ready, may proceed. You scared off everyone else in the audience. You'll see my return. Good morning, Your Honors. May it please the Court, Counsel. I'm Faith Strong. I represent Dr. Ruben Hosier. I'm here on behalf of Scott Quinn and Associates. There are only two issues in this case. And as usual, I'll just cut to the chase right off the bat. The first one is about the ineffective assistance of his trial. In a case of the commitment of a sexually violent person, there are three things that the State has to show. First, they have to show that he has a history, or he's been convicted of a sexually violent offense. Second, they have to show that he suffers from a mental disorder. Third, they have to show that because of that mental disorder, he is substantially likely to commit another sexually violent offense. So what it comes down to, basically, in each of these cases, are the psychiatrists and the psychologists who have done the evaluations. Because what we really have to talk about and get through to a jury is whether or not he has a mental illness that is going to keep him from being able to behave himself in the future. So quite often, the only witnesses we have in these cases are doctors. In this case, trial counsel talked about things in an unorthodox way. So the statute provides that if a respondent submits himself to the State's experts for evaluation, then he is in fact entitled to his own doctor to evaluate him as well. There is no provision for a consulting doctor, nothing like that, just his own expert witness to evaluate him, potentially for use at trial or for whatever use you want to make a bet. But of course, that information is discoverable. In this case, trial counsel decided he didn't need that. He had two doctors from the State who would testify that Reuben Hosier met the requirements of the statute. The only way to escape the inevitable conclusion by the jury that he is in fact a sexually violent person is to somehow refute those doctors. That's why the statute is written that way. That's why there's no wiggle room for denying a defendant the appointment of an expert to do that. But for some reason, trial counsel didn't think he needed it. He was afraid to use what his explanation was that if he had a third expert evaluate Mr. Hosier, that that expert too might find that he was a sexually violent person, that information would be disclosed to the State, and then the State would now have three experts that say Mr. Hosier is sexually violent. But without that, what's he got? He even told the trial court, I need a consulting expert that I won't have to disclose and that there's no provision for in the statute to help me because I maybe can't do this on my own. Let me ask you, would you be here if he had not asked for an expert at all as trial strategy? Oh, yep. I wouldn't be here to argue that he had failed to investigate because how in the world is he supposed to challenge the evaluation reports of the two State experts without one of his own? And in this case, we got lucky in that he actually told the court, I can't. I don't know how. I need help from an expert to teach, to show me how to attack the State's experts. But when he was told that you can't have that because there's no such thing as a consulting expert that is not disclosable in these cases, he said, well, then I just won't have one at all. I'll just go forth without. And that's exactly what he did. So he forewarned the court and everyone else that he couldn't do this without an expert, but then he chose to do this without an expert anyway. Of course, we go to trial. The State's two experts say exactly what everybody expects them to say, that Reuben Hosier is a sexually violent person. And in defense, there was nothing to present. If counsel read and had some level of understanding of the reports of the two experts and came to the conclusion a third expert is going to bury me and it will be disclosable, why is it a valid trial strategy to say I have to find the chinks in the armor of these two reports and I cannot risk having a third expert piled on my client? Why isn't that a valid trial strategy? First of all, there is some logic to that except that it really doesn't matter if there are two expert witnesses against your client or there are three expert witnesses against your client. It's not good either way. I think that a third one would have been a cumulative witness. And I believe it is in the record somewhere that this particular defense counsel had actually prosecuted these cases for the AG's office for years and knew as a matter of policy something that they had done forever. They would not have used that third expert. But that's a little bit of conjecture on my part. So you can't say that he was just ignorant? He told the board he was ignorant. I'm not talking about ignorance of the fact that he didn't really have any right to a consultative counsel. He wasn't ignorant. And he told – he couldn't possibly have been ignorant. He did prosecute these cases for years and told the court that that's what he did. But he also told the court I'm not qualified to tear apart these state expert witnesses without my own expert. That line is what hangs me up. He's telling the court that I can't do this, but I'm going to. I mean, that's very strange to me. And I think that those particular facts is what makes this a different case than had he not asked for an expert in the first place. I don't know where he thought he was going with this request for a consulting expert. He knew there was no authority for it. Everybody argued there's no authority for it. They made it clear to him you are not getting one. Now, do you want to go back and have the expert you are entitled to have? And he still said no. It makes no sense at all. It left the state with two experts to present against his client and him with nothing at all to refute it except for what he has told the court is insufficient knowledge to be able to do that on his own. I can't tell you how disingenuous that statement may have been because he had prosecuted these. I don't know. I don't even think we have to get into it. But he did say that. And we can find errors that he committed maybe because he just didn't really understand what he should be doing from the defense side. There are things that he did wrong that he could have attacked on both of these state experts. He didn't really do it. He did some sort of innocuous, a little bit of impeachment by asking one of the doctors, you wrote in your report that he had already been found to be a sexually violent person, didn't you? And the doctor admitted, yes, I did, and that was an error, and I should have corrected it, but I didn't because, of course, the man had never been found to be an SVP. I think a larger issue that shows that he really wasn't on the game as much as he should have been is that the state asked these doctors whether or not the defendant had been convicted of sexually deviant offenses. Well, deviance is a kind of hot word. It doesn't sound good. It certainly doesn't sound good to a juror. But sexual deviance has absolutely nothing to do with the Sexually Violent Persons Act. Those things aren't related. They're two totally different things. It wouldn't matter if he had been convicted of 45 sexually deviant offenses. That doesn't qualify him as a sexually violent person under this act. Yet this defense counsel didn't notice. He didn't object. He didn't talk about it. So he did make some errors. Maybe he wasn't kidding that he wasn't qualified to do this without an expert backing him. But he forewent that expert that he was 100 percent excited to have. Bust through trial with two experts against his client. He's got virtually nothing to say. And so exactly what we would think would happen, happened. He was convicted. And he was found to be a sexually violent person. He completely let the state run over him with no tools at his disposal solely because he chose not to use them. Trial strategy is one thing. But a failure to investigate, to find out what that expert might say or might could help you understand better, that's not trial strategy. That's just dropping the ball. And that's what happened here. So what if he believed that there was no way possible that the third expert was going to not find him to be SVP? Well, I don't think he had a basis for finding that, making that decision without contacting some doctors and talking to them. But even if that's what the result had been and the third expert had found that, that expert still could have helped him understand how he could attack some of the other problems and the other state's experts. So there would have been some value to having an expert of his own anyway. And if the state used it as a third expert, is that really going to matter? Aren't the first two pretty much going to seal the guy's fate here? The third one's just not really that much more persuasive, if that's what the result had been. But we don't know. Maybe the result would have been everybody's jumped to conclusions here. There are other things that he didn't address, like there are some potential serious flaws in an actual pedophilia diagnosis. Had he had an expert to explain to him how you diagnose pedophilia? We might have been able to knock that entire diagnosis out of here, and that would have been the end of the case. But he didn't do that. I've been involved with one of these cases personally at the trial level, and I knew that when I read this record. For somebody who has prosecuted these cases forever, that should have jumped out at him. It didn't. Maybe had he had this expert that he was entitled to have, that expert could have said, you need to look into this issue because that may make a difference. Would that have been disclosable? Even if it had been, it still would have been helpful to him. Yes, the witness absolutely would have been disclosable. But the ability of that witness to really hurt him from the state's side is pretty slim after the state already has to. And think of how valuable it would have been had he had a conversation about the requirements of diagnosing pedophilia. Because it's quite possible that it's a misdiagnosis in this case. He wouldn't know that because he didn't bother to ask anybody. He just flattened and investigated. He went along with what the state showed him in reports, and that was the end of his involvement, really. So, for those reasons, he certainly did not, I mean, he made errors, and certainly you can see the harm that that caused to the defendant because it resulted in no evidence being presented at all. I mean, the only attempts at impeachment are pretty silly. It's about sloppy paperwork. He just did not do what he could have done. I can identify three things that he could easily have done if he'd only known to do it. And he didn't. And for that reason, the defendant was completely deprived of a fair trial. And he ought to be. The finding that he is a sexually violent person should be vacated, in this case remanded, for a trial that actually has all of the experts where the legislature intended them to be on both sides of the case. And that's what we ask you to do. I can talk a little bit about Issue 2, but essentially it's exactly what's written in the brief. It's about how the prosecutor continued to refer to the defendant being convicted of sexually violent offenses when in fact all the testimony was that they were sexually deviant offenses. You don't have a fair trial counsel like that. But that's a pretty straightforward argument, and unless you have any questions about it, I don't see any need to belabor it. We ask that you would vacate this finding and remand for a new trial. Thank you, Counsel. Thank you. Counsel? Good morning. May it please the Court? Counsel? Assistant Attorney General Samina Mohammed on behalf of the people. Neither counsel's performance nor the prosecutor's closing argument deprived the respondent of a fair trial. Turning first to the issue of counsel's performance. Trial counsel made a strategic decision not to accept the Court's appointment of an independent expert. Counsel had to balance the potential value of an expert against the very real risk that the expert would find, just as the State's two experts did, that respondent was an SVP. In addition, counsel was concerned that the appointment of an expert, with the attendant examination, preparation of a report, and disclosure to the State, would unduly delay trial, all the while his client would remain confined in the treatment and detention facility in Rocheville. It was reasonable, as Justice Goldenherz said, that counsel determined that a third expert would bury him. Under these circumstances, he reasonably determined that the risk of a negative conclusion and the potential for a delay in trial outweighed any benefit that the expert could provide. And without an expert, unlike respondent's argument, counsel was able to challenge the State's case. Counsel, as respondent mentioned, did challenge Dr. Proctor's conclusion or Dr. Proctor's credibility based on the fact that Dr. Proctor had erroneously written in his report that respondent had already been found to be an SVP. He highlighted to the jury that Dr. Proctor had every opportunity to correct this error, but for some reason he did not, so that certainly called into question Proctor's credibility. He also brought to the jury's attention that a few years earlier, Dr. Karen Kirschke at the treatment and detention facility had ascribed only a rule-out diagnosis of pedophilia to respondent. And he clarified that a rule-out diagnosis with the same— and so Kirschke made this rule-out diagnosis with the same information that was available to Dr. Proctor and Nicolai, no new information was available to them, but yet they were able to affirmatively diagnose respondent with pedophilia. So clearly, counsel had some used tools at his disposal to challenge these experts, even without the appointment of his own independent expert. Respondent makes much of counsel's statement in his motion that he lacked the knowledge to adequately oppose or identify issues in the State's expert's testimony, but that is largely irrelevant to a Strickland analysis. In the first place, counsel made this statement in service of his larger argument to the court, asking the court and providing the court with reasons why he needed a consultant expert. Later, he did clarify that he in fact had a significant amount of experience in trying SVP cases based on his years at the Attorney General's office. But leaving aside counsel's sort of inconsistent representations as to his capabilities or lack thereof, that is not what's important in this case. It is counsel's performance as it's measured by the record and not as counsel perceived it to be that is relevant to a Strickland inquiry. It's an objective rather than a subjective inquiry. And an objective look at the record reveals that counsel made a number of strategic decisions, all of which are entitled to substantial deference, and he vigorously cross-examined the State's experts. Therefore, his performance was more than constitutionally effective. Turning then to the prejudice issue, respondent has not shown that a third expert would have found him not to be an SVP. Respondent admits that we don't know what that expert would have said, and that alone is fatal to respondent's claim that he was prejudiced by counsel's performance. How would they show that? Perhaps by introducing or having a report prepared by an expert that said that respondent was not an SVP or that coming to a different conclusion from Dr. Proctor and Dr. Nicolai. And there was, in fact, overwhelming evidence supporting Dr. Proctor and Dr. Nicolai's conclusion that respondent was an SVP. It's undisputed that respondent was convicted of more than one sexually violent offense, aggravated criminal sexual assault in 2004 and 2005. Both doctors diagnosed respondent with pedophilia, and respondent himself admitted that he was attracted to underage female children. The actuarial instruments administered by the doctors placed respondent in the moderate to high risk to re-offend, and the doctors' consideration of the dynamic and protective risk factors also led to their conclusion that respondent was substantially probable to re-offend if not confined. There is no evidence in the record rebutting those conclusions or suggesting that another expert would have found differently. Nevertheless, respondent argues that an expert would have alerted counsel to issues that he otherwise missed. For example, she points to the fact that counsel did not object to the state's use of the word deviant. To clarify, the state never characterized these offenses that respondent committed as sexually deviant offenses. Instead, counsel asked the experts whether respondent's behavior was sexually deviant in committing these offenses. And the experts replied yes, and then Dr. Nicolai explicitly testified that the characterization of this behavior as deviant was undeniably relevant to her conclusion. She stated that among the dynamic risk factors she considered was respondent's deviant sexual interest. And so, therefore, the facts of the offenses and the state's characterization of them were certainly relevant to the expert's conclusion that respondent wasn't SVP, and any objection would have been fruitless. Respondent also mentions that counsel did not object to the pedophilia diagnosis. Pedophilia is characterized by intense urges and fantasies regarding sexual activity with prepubescent children. Now, prepubescent children are generally defined as those 13 years of age or younger. And respondent's victims, two of them, his victim in Arkansas in 1992 and his victim in Illinois in 2004, were both 13. So respondent surmises that they may not have been prepubescent but may in fact have reached puberty. Again, this argument fails because respondent has not shown one way or the other whether these victims met the characteristics to be classified as having reached puberty or as having been prepubescent. And so for that reason, again, counsel's decision not to explore this issue was reasonable and did not prejudice respondent. Respondent addresses in her brief, the second issue in respondent's brief, which relates to the prosecutor's closing argument. And just briefly, I'd like to point out that that argument was correct. It correctly summarized the evidence. The prosecutor stated that respondent had a 20-year history of sexual violence, and this trial took place in 2013. In 1992, respondent was convicted of incest in Arkansas, and that crime in Arkansas is equivalent to the Illinois crime of criminal sexual abuse, which is a sexually violent crime under the Act. Respondent went on to commit additional sex crimes in the years between 1992 and 2013, specifically aggravated criminal sexual assault in 2004 and two counts. He was convicted of in 2005. So the prosecutor's argument in closing accurately summarized the evidence and provides no basis for relief for respondent. If there are no further questions, we would ask that this court affirm the judgment of the circuit court. Thank you. Thank you, counsel. Counsel? I have just a few points that I want to make. They argue that it is speculation that had he investigated this case and gotten an expert, that expert would have found, or could have even found, that Oja was not a sexually violent person. Well, because he didn't bother. Obviously, I can't create that on a whole claw. That's another way that this respondent is handcuffed, and then he can't defend anything that his trial counsel did. How can he possibly? It was trial counsel's job to do that. He didn't do that. There's not a process for me to do that and bring that to you, the appellate court. But it is interesting that we talk about the Krischke evaluation in 2006. Nothing new had happened since 2006, so we're talking about a seven-year time period where nothing happened. I think that would be relevant. It certainly would be relevant to someone who was evaluating whether or not he was a sexually violent person. But I don't get to know because trial counsel didn't do the work to find out. Well, I understand your argument that you can't rebut a negative. But under Strickland, don't you have to show that there's a reasonable probability that but for the error, the outcome would have been different? And how do you do that? How did he do that? How I do that now is to point out the errors that trial counsel made in how he failed to attack the state's experts. He didn't have the ability to go after the state's experts and point out the holes in their cases. Like, for example, pedophilia is only to be diagnosed when you have incidents that are more than six months apart. Otherwise, it is actually, oddly, this is a terrible phrase, but consider a phase. If you have incidents that span more than six months, now those things can be considered towards a pedophilia diagnosis. There wasn't any discussion of that at all. We do know that the 2004 and 2015, 2004 and 2005 charges, may very well have happened within days of each other. So those certainly don't count as a six-month period of time to establish pedophilia because we didn't get into the prepubescent question at all. He didn't challenge any of those things. He didn't do the investigation to find out if a 13-year-old in 1992 looked like she was 19 or she looked like she was nine. That is a huge factor. He didn't do any of that. He didn't do any of that investigation. Had he done that investigation, which he could have done had he had an expert to say, you need to look into this, then we would have that to present to you. One more thing he didn't do. That putting the burden of this respondent bringing all of that information forth, such as the state suggested that I should be able to bring you a report that says he's not a sexually violent person, that's going way further than Strickland ever required. We don't have to prove that it would have changed everything, just that there's a reasonable probability. And with all of the things that I identified in the brief that counsel failed to do, there has to be considered a reasonable probability because there's just too many factors and too many holes in what the state presented, all of which he either didn't see, didn't recognize, or thought weren't important. And they absolutely were important. They're absolutely vital. He just didn't do anything with them. There's no way that I could present you this report. The idea that I could present an SVP report saying that he is not SVP, there's no way I can do that, because his actions in the trial court stopped that in its tracks. So to expect that from this defendant, it's asking too much. We're not asking for you to find that he's not a sexually violent person. I'm not asking you to do that. I'm asking you to let him have a new trial where he actually gets the fair shake that the legislature intended him to have when they wrote, he is entitled to an expert. That's all I'm asking for. An expert to either testify on his behalf or advise counsel of what he can find wrong with the state's experts. I found him. I found those errors. If he's so experienced at this, why didn't you find them? They're right there glaring as they can be in the, you know, reclaimed throughout the record. Let's see. It is true that I can't show you that the two of these 13-year-old victims were prepubescent. I can't do that. And the reason I can't do that is because trial counsel didn't do his job. Let's let this man have a new trial with counsel who does do his job and do the investigation. Go find out. Yep, the state's right about that. They were prepubescent or they're clearly not. Let's do that investigation and find out. Let's reach a result that we can rely on and have faith in. I would ask that you grant him a new trial. Thank you, counsel. Appreciate the briefs and arguments of both counsel. Take the case under advisement. We're recessed to 1 o'clock.